IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



KARLA LAVERNE SEALS,

    Plaintiff,

v.                                                        Civil Action No. 2:18cv22

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on the Report and Recommendation of the United States Magistrate Judge DENYING Plaintiff Karla Laverne Seals' ("Plaintiff's" or "Seals'") Motion for Summary Judgement and GRANTING Commissioner Nancy Berryhill's ("Defendant's" or "Commissioner's") Motion for Summary Judgment. Doc. 20. For the reasons stated herein, the Court **OVERRULES** Plaintiff's Objections to the Report, Doc. 21, and **ADOPTS** the Report and Recommendation in full.

### I. PROCEDURAL HISTORY

Seals brings this action under 42 U.S.C. § 405(g) to challenge the Commissioner's denial of her claim for disability insurance benefits pursuant to Title II of the Social Security Act. Seals filed applications for benefits on August 12 and September 6, 2013, alleging that she became disabled on August 13, 2013,[1] due to acquired immunodeficiency syndrome ("AIDS"), hepatitis C, herpes, depression, and anxiety. Report and Recommendation ("Report") at 1-2. The state agency denied these claims. Id. An Administrative Law Judge ("ALJ") heard the matter on

---

[1] August is her revised onset date of disability. Administrative Record ("Record" or "R.") at 40. Accordingly, the relevant period for Seals' symptoms are August 13, 2013, through the date of her hearing on October 11, 2016.

1

October 11, 2016, and issued an opinion denying the claims on January 10, 2017. Id. at 2. The Appeals Council denied Seals' request for review of the ALJ's decision on November 17, 2017. Id.

Seals filed a complaint with this Court on January 29, 2018, Doc. 3, and filed her Motion for Summary Judgment on June 11, 2018, Doc. 16. The Commissioner filed a cross-Motion for Summary Judgment on July 11, 2018, Doc. 17. This matter was referred to a United States Magistrate Judge for a Report and Recommendation on May 2, 2018. Doc. 9.

The Magistrate Judge reviewed the motions and issued the instant Report and Recommendation on December 19, 2018. Doc. 20. Plaintiff timely filed her objections to the Report on January 2, 2019, Doc. 21, and the Commissioner filed her response on January 16, 2019, Doc. 22.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. The Court reviews those parts of a Magistrate Judge's recommendation to which a party has not objected for clear error. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315–16 (4th Cir. 2005).

In exercising de novo review of the parts of a Magistrate Judge's recommendation to which a party has properly objected, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by

substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation mark omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (quoting Craig, 76 F.3d at 589) (internal quotation mark omitted) (final alteration in original). Even if "the evidence will permit a conclusion inconsistent with that of the Commissioner," the Court must uphold the ALJ's decision if it is supported by substantial evidence and the ultimate conclusions are legally correct. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964); Myers v. Califano, 611 F.2d 980, 982 (4th Cir.1980).

## III. DISCUSSION

The Report describes the relevant facts in detail, and neither party objects to the Report's account of the facts.[2] Accordingly, the Court need not reiterate the factual background, except where relevant to its analysis.

### A. Applicable Law

There is a five-step process for assessing a claim for disability insurance benefits. An ALJ must determine: (1) a claimant's current employment status; (2) the medical severity of a claimant's impairments; (3) the classification of a claimant's medical impairment; (4) a claimant's residual functional capacity ("RFC") and ability to perform past relevant work; and (5) a claimant's

---

[2] Seals argues that she "disagrees with the Magistrate Judge's characterization of the record and rationale in rejecting [her] arguments." Doc. 21 at 1-2. However, she does not dispute any specific facts.

3

ability to adjust to other work. 20 C.F.R. § 416.920; see also Brown v. Comm'r Social Sec. Admin., 873 F.3d 251, 254-55 (4th Cir. 2017).

In analyzing a claimant's RFC at step four, a Court must consider the objective medical evidence in the record, including the medical opinions of treating providers. Felton-Miller v. Astrue, 459 F. App'x 226, 231 (4th Cir. 2011). In cases filed before March 27, 2017, "controlling weight must be accorded to a treating source's medical opinion," because those sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [one's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." Brown, 873 F.3d at 256 (citing 20 C.F.R. §404.1527(c)(2)) (internal quotations omitted). If an ALJ does not afford controlling weight to a treating physician, she must articulate "good reasons" for the weight assigned to the opinion and address the following factors: (1) the length of a treatment relationship; (2) the nature and extent of a treatment relationship; (3) the degree of supporting explanations for their opinions; (4) consistency with the record; and (5) the specialization of the physician. Jefferson v. Comm'r of Soc. Sec., No. CIV.A.4:08CV40, 2009 WL 1491229, at *9 (E.D. Va. May 26, 2009) (citing 20 C.F.R. § 416.927(d)(2)-(6)); see also Brown, 873 F.3d at 256. An ALJ's "failure to build an accurate and logical bridge from the evidence to his conclusion constitutes reversible error." Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017) (internal quotations omitted).

B. **ALJ Decision**

The ALJ found that Seals met the insured requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since August 14, 2013. Report at 17. At steps two and three, the ALJ found that Seals had the following severe

impairments: (a) major depressive disorder; (b) generalized anxiety disorder with panic attacks; (c) OCD; (d) AIDS; (e) hepatitis B; and (f) obesity. Report at 17. The ALJ classified any additional impairments as non-severe, because they responded to medication or required no significant medical treatment, failed to continuously exist for twelve months, or did not otherwise continuously impose functional limitations. Id. The ALJ further determined that Seals' severe impairments, either singly or in combination (along with her other conditions), failed to meet the severity required for a finding of disability. Id.

At step four, the ALJ found that Seals retained the functional capacity to perform light work. Report at 17. To perform such work, the ALJ also determined that Seals: (a) could "occasionally climb ramps and stairs" and "stoop, crouch, kneel, and crawl"; (b) could "never climb ladders, ropes, or scaffolds"; (c) must "avoid concentrated exposure to extreme [conditions]. . . and [other specified] hazards"; (d) could perform only non-complex, "simple, routine, and repetitive tasks consistent with unskilled work," involving sustaining and attending to such tasks in two-hour segments, during normal workdays and weeks, "with customary breaks"; (e) could perform only "low stress work" requiring only occasional decision-making and presenting "only occasional changes in the work setting"; and (f) should have "no interaction with the general public and superficial interaction with coworkers and supervisors." Id. at 18. Based upon this assessment of Seals' RFC, at the fourth step of analysis the ALJ found that Seals could no longer work as a massage therapist or water meter reader. Id.

Finally, at step five, and after considering Seals' age, high school education, work experience, and RFC, the ALJ found that she could perform other jobs, such as an agricultural produce sorter, a marking clerk, or a mail clerk, which existed in significant numbers in the national economy. Id. Accordingly, the ALJ concluded Seals was not disabled from August 14,

2013, through the date of the ALJ's decision and was ineligible for a period of disability or disability insurance benefits. Id.

In assessing steps four and five, the ALJ attributed "only partial weight" to the opinions of Dr. Rhoad, Dr. Searfoss, and therapist Newsome, while attributing "more weight" to the assessments made by Dr. Leizer, the non-examining state agency psychologist. Id. at 22.

## C. Analysis

Seals objects to the ALJ's decision to grant greater weight to the opinion of the non-examining agency psychologist and lesser weight to the opinions of Ms. Newsome, Dr. Searfoss, and Dr. Rhoad. See generally, Doc. 21. She also objects to the ALJ's reasoning for this decision, namely: (1) the ALJ's characterization of her treatment as "conservative and intermittent"; (2) the ALJ's finding that she improved with prescribed medications; and (3) the ALJ's finding that her daily activities were inconsistent with a finding of disability. See R. 28. Finally, Seals argues that the ALJ did not provide an adequate explanation for granting the non-examining psychologist greater weight than the treating physicians. Doc. 21 at 7.

As a preliminary matter, Commissioner argues that Seals has waived her objections to the Report by failing to object with specificity. See Doc. 22. To preserve an objection to a Magistrate Judge's report, "a party must object to the finding or recommendation on that issue with sufficient specificity so has reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). Plaintiff's nine-page brief, while lacking organization, adequately identifies her objections to the Report's analysis.

Commissioner further argues that Plaintiff's objections are improperly duplicative of her initial Motion for Summary Judgment. Some courts have found that:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the

magistrate useless... This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D. Va. 2008) (quoting Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir.1991)). Here, Seals' objections to the Magistrate Judge's Report reiterate the same arguments she made in her Motion for Summary Judgment. Compare Doc. 16 at Ex. 1 with Doc. 21. However, Defendant has failed to provide controlling authority that would permit the Court to dispose of this matter based on the repetitive nature of Plaintiff's claims alone. Accordingly, the Court shall proceed to the merits of Plaintiff's objections.

The ALJ attributed the most weight to the medical opinion of Dr. Leizer, who opined that Seals was capable of performing simple, routine, repetitive tasks at work. Report at 16. Her express reasons for doing so were that Dr. Leizer's opinion was consistent with: (1) Seals' conservative and intermittent health treatment; (2) her "documented improvement on her prescribed medications"; (3) her "extensive activities"; and (4) other medical records. R. 28. The ALJ found that Dr. Leizer's opinion was consistent with certain CPR treatment records that found Seals to be "alert, with appropriate eye contact, logical thought process, an adequate memory and attention/concentration," id., and Eastern Virginia Medical School ("EVMS") records that found her physical abilities to be within the "normal" range, R. 29.

Seals first argues that it was inappropriate for the ALJ to conclude her treatment was "intermittent" because: (1) her missed appointments were partially caused by her anxiety and (2) she should not be penalized for needing to care for her husband. Doc. 21 at 3-4. It is true that "faulting a person with diagnosed mental illness . . . for failing to pursue mental health treatment is a questionable practice." Walker v. Berryhill, No. 1:17CV63, 2018 WL 3978175, at *4 (N.D.W. Va. Aug. 20, 2018). However, in the instant case, the ALJ found that Seals' anxiety did not prevent

her from regularly seeking treatment for her HIV.[3] See R. 44, 65. This undermines Seals' argument that her mental health prevented her from seeking consistent medical assistance. Moreover, Plaintiff has not furnished any authority for the proposition that familial obligations or the inconvenience of mental health treatment support a finding of disability. Accordingly, Plaintiff's objection to this aspect of the Report must fail.

Plaintiff next challenges the ALJ's finding that she improved after regular treatment, arguing "this relies upon largely ineligible [sic] records that are unable to be decoded fully, and only two months of treatment versus three years prior." Doc. 21 at 4. While it is true that some of Dr. Hyder's notes are barely legible, they contain some portions of typewritten text that confirm Seals was "responding fairly well to the medications" and "[t]olerating well without any adverse effects." See R. 438 (dated July 18, 20160); R. 466 (dated August 5, 2016). Moreover, evidence from medical practitioners at EVMS shows that on June 8, 2016, Seals "seemed to be doing better since resuming therapy." R. 28. In weighing medical opinion evidence, the ALJ must consider consistency between the medical opinion and the "record as a whole." 20 C.F.R. § 404.1527(c)(4). Given the consistent evidence of improvement from EVMS, Dr. Hyder's notes provide support for the conclusion that Seals benefitted from regular treatment.[4]

Seals next objects to the ALJ's finding that she engaged in "extensive activities inconsistent with a disability finding." Doc. 21 at 3. An ALJ "must consider daily activities when making a determination about disability." See Craig, 76 F.3d at 590. In support of her finding that Seals

---

[3] Plaintiff rejects this comparison, arguing she treated her mental health more frequently than her AIDS and hepatitis, and that those conditions were more serious than her mental health conditions. Doc. 21 at 5. However, it is not this Court's job to weigh the evidence, but only to find that the ALJ's analysis is substantially supported. Barnhart, 434 F.3d 650, 653.

[4] The ALJ's finding that Seals improved with treatment also rebuts Plaintiff's assertion that the ALJ failed to account for fluctuations in her condition. While "[m]ental illness waxes and wanes over time," Walker, 2018 WL 3978175 at *5, improvement with consistent treatment weighs against a finding of disability, see Rosado v. Berryhill, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018).

only had a "mild restriction" in her activities of daily living, the ALJ cited the following evidence:

> Prior to her divorce in April of 2015, claimant was able to attend to her personal care tasks and care for her disabled husband. While the claimant testified she has since had to rely on others in the household for performing her daily tasks, she drove independently to the hearing as well as to doctors' appointments. Moreover, she shops in stores and performs light housework.

R. 23. In support of her finding that Seals had "moderate" difficulties in social functioning, the ALJ cited mental health treatment notes from CPR, which showed that Seals was having sexual relations with a neighbor around the alleged onset date of her disability. R. 23. Moreover, she noted that Seals had not experienced any incidents of decompensation, and "while the claimant has appeared tearful during office visits, she has also presented as cooperative during examinations and has demonstrated improvement in her behavior on her prescribed psychotropic medications." R. 23-24. Finally, the ALJ cited Dr. Rhoad's opinion to find that Seals had only moderate difficulties in "concentration persistence or pace." R. 24.

Seals attacks each of these findings. For example, she argues her relationship with another man has nothing to do with her ability to work and socialize appropriately in a work environment. Doc. 21 at 5. She further argues that "Plaintiff's daily activities were certainly more limited than the ALJ and Magistrate Judge suggest." Id. Finally, she highlights her testimony that she experienced "good and bad days," arguing that such fluctuations are "inconsistent with the ability to perform work 8 hours per day, 5 days per week." Id. at 6.

The record in the instant case provides conflicting evidence of Seals' daily activities. For example, in a self-report from February 13, 2014, Seals wrote that each day she: wakes up to have breakfast with her husband and watch the news; sometimes does grocery shopping, laundry, or goes to doctors' appointments; tries to tend to her pets, her home, and her family; and tries "to get outside every day to walk and get fresh air." R. 267. The evidence from her physical examinations

at EVMS "reflect physical examination findings within normal limits and consistent reports of no side effects from her medications." R. 29. Seals was also taking online college classes. R. 46-46. Such evidence appears to be inconsistent with a finding of disability. In contrast, a mental capacity assessment by Ms. Newsome from August 23, 2016, found that Seals had "marked" or "extreme" limitations in most categories of "sustained concentration and persistence," "social interaction," and "adaptation." R. 469-71. This Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Accordingly, when presented with such a conflict in evidence the Court must defer to the ALJ's substantially supported conclusion.

Seals finally argues that the ALJ did not provide an adequate explanation for her decision to give greater weight to Dr. Leizer's opinion evidence than to that of the examining medical professionals. "[C]ontrolling weight must be accorded to a treating source's medical opinion" unless an ALJ articulates specific reasons for not doing so. See Brown, 873 F.3d at 256 (citing 20 C.F.R. §404.1527(c)(2)). The ALJ must consider: (1) the length of a treatment relationship; (2) the nature and extent of a treatment relationship; (3) the degree of supporting explanations for their opinions; (4) consistency with the record; and (5) the specialization of the physician. Id. Here, the ALJ clearly explained that she gave Dr. Leizer's opinion more weight than the opinions of Ms. Newsome or Dr. Rhoad[5] because of its consistency with other evidence in the record, namely: "the claimant's conservative and intermittent mental health treatment, the claimant's documented improvement on her prescribed medications, and the claimant's extensive activities." R. 28. The ALJ explored each of those categories in her opinion. The ALJ noted that Dr. Leizer's opinion was also

---

[5] Dr. Searfoss was not considered an "examining" physician.

consistent with Seals' medical records from EVMS. R. 29. Moreover, the ALJ considered the limited scope of Dr. Rhoads' opinion:

> Of note is that Dr. Rhoad's assessment . . . is from in [sic] June of 2014, when the claimant was receiving intermittent mental health treatment and had not yet sought treatment with a psychiatrist. Thus, his opinions do not accurately reflect the claimant's functioning on a regular basis. The Global Assessment of Functioning (GAF) scores also reflect mere snapshots of the claimant's overall functioning and are thus entitled to only partial weight.

R. 29 (internal citations omitted). In sum, it appears the ALJ appropriately considered all the evidence and weighed Dr. Leizer's opinion based on its consistency with the record and the relative scope of his review. Cf. Lewis, 858 F.3d at 867 (rejecting an ALJ's decision to give greater weight to a non-examining medical professional when "the ALJ's analysis [to do so] spans only four lines and overlooks critical aspects of [the claimant's] medical treatment history."). Accordingly, the Court **OVERRULES** Seals' objection on this basis.

## IV. CONCLUSION

For the reasons stated herein, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge in full.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 27, 2019

11